and Tate. I would like to reserve three minutes for rebuttal, please. All right. This case differs in a good way from a typical separation action. The common scenario in a separation action is you see a warrantless removal of a child from the home. Here, we have a judicially authorized warrant for the arrest of the parents, with the separation being incidental to the parent's arrest. We also have the officers maintaining the family unit by keeping the son and the mother together in order for the mother to communicate her choice of a temporary guardian for the one day that she was in jail. Third, we have the placement of the child with the guardian that the mother had authorized. Plaintiffs challenge neither the separation itself nor the ultimate placement of JB. Instead, their theory is more of an inverse separation theory, that the officers should have allowed the mother to call a relative from the scene of the arrest in order so that the mother or so that the child and parents could be separated at an earlier state before the child could witness the arrest being taken place or the mother and father being taken away in the cars. Kennedy. Counsel, am I correct that procedurally, whatever we do on this appeal, there's still an excessive force claim that's going to trial? Yes. All right. Thank you. There is. And that's an excessive force claim with both the parents and the child involved. So none of the plaintiffs would be dismissed if we prevail on this. The practical effect is that Officer Maggiano would no longer be in the case. So we know that separation itself is not the issue. It is undisputed that there were arrest warrants for the parents and Ms. Hernandez testified that she knew that she'd be separated from her child as a result of the arrests. Also, at an answering brief, page 24, plaintiffs state, if defendants had granted Hernandez the opportunity to call from the scene of the arrest, there would not have been a familial association violation here. There would have been no violation of the right to care, custody, and control. So that assumes that there would have been separation regardless. So the entirety of the alleged constitutional deprivation is the alleged deprivation of a phone call at the home? Exactly. Yes. I would have thought here that whether there's controlling precedent on this, that this is even a constitutional violation, is the ultimate question we have to answer. And there is not. Plaintiffs have cited no precedent from the Supreme Court or from the circuit that deals with this situation. What the district court did In other words, nothing that the right to make a phone call at the point of arrest has been, quote, clearly established, unquote. Don't those two words mean something? Exactly. There is no clearly established law because there's no case on point requiring a call from the scene of the arrest to make custody arrangements or otherwise. I think they, as I understand it, the parents acknowledged that once they've been arrested and putting the child in protective custody is legitimate. Is that right? Yes. So we're looking at this narrow window of time between putting the child in protective custody and when they got taken with the child. And how long is that period? So the arrest happened at 8 o'clock in the morning. And by 11, the mother and son were brought to the county social worker to effectuate the call. The mother was then taken from the police station to booking at 1 o'clock. And while still in booking, she learned that the she had recommended and arranged for the care. So within, although we don't know precisely at what point, she was still in the booking process. And booking is actually a key because the district court relied on the penal code 851.5 in talking about the timing of a call and creating this property right that this due process, the alleged due process violation is set. And it appears that the court misconstrued this statute. Subsection C of 851.5 refers to within 3 hours, excuse me, as soon as practicable or within 3 hours of arrest, an officer must inquire whether the arrestee is a custodial parent, cardian. And the court apparently relied on that as soon as practicable language to state that there was an immediate right to call once With regard to the federal constitutional claim, does it matter to your qualified immunity defense whether the court got the California statute right or wrong? Well, it is relevant to the first prong of the analysis, whether there was a constitutional violation because there is a recognized property right for phone calls for arrestees immediately upon booking. So there is this, the circuit has recognized that that creates a property right. But for the purposes of this situation of when, when that would be, because there is no, there's no case law. But it seems going back to Judge Bennett's question that under the Supreme Court precedent that we don't hang the constitutional violation on either a state or local regulation. So I'm not sure what would matter at all, would it? Generally that's true. And, and, but because this court has recognized this right, property right to the phone calls based on this state statute, specifically in Carlo versus Chino, the court has recognized that. But the timing and based it on the statute 851.5, but subsection A, subsection A says immediate right at a phone, you are allowed a phone call immediately after booking. And that is, that creates the timing that we're looking at here. We're not talking about a phone call, are we? Are we talking about a phone call to place the child or the right to a phone call with, vis-a-vis the child? Yes. And is that something different? It is. It is because we're talking about a familial association claim here. And so that the right that we're looking at is the, the right to control who the child goes to. And that was effectuated here, albeit not immediately for very practical safety reasons. But within a short timeframe by bringing the child to the police department and, and, and a social worker, worker to conduct that authorization. And really a social worker is the proper person to do that because the officers in the scene have a lot of other things that are going on. And the social worker's in the best position to determine where, whether the home is suitable, conduct background checks, and create the documentation required to keep track of where the child was transported. Why it's not, you know, we don't see, even if there is a technical violation of the statute here, we don't see deliberate indifference because of, in part because of the reasons, the rationale of why you wouldn't allow a phone call to be made at the scene. A custodial parent who is arrested may be calling someone to come and take, take their child to care for them, but also may be calling someone to come to the scene to ambush the police or destroy evidence or create, or even if it's not so nefarious, just create more chaos than is needed at an arrest scene beyond what's already there. So there's practical reasons. And in the situation, particularly here, the officers did not act in, with deliberate indifference to the rights of the, to the familial association right. First, Maggiano, there, there's very limited evidence at all in the record about Maggiano's conduct. All that is alleged is that he denied the request for the call. As for Officer Tate, she actually acted affirmatively to maintain that family unit. She kept the mother and son together. She went with them to the police department. She stayed with them while the social worker was conducting the inquiry. They were kept together in a room with snacks and television. You know, she maintained that, that family unit acting without a deliberate indifference for that right. And even if there was a, even if there was a violation, it would be a de minimis harm. Because the, the son and the mother were kept together, and there's no harm claimed other than that the son witnessed the arrest, the delay really wouldn't have changed anything from that point. The, the right was, sorry, the unity, the unit was maintained. The, there's nothing that was claimed that happened at the police department, and ultimately the, the JB went to the family member of choice. Now, going back to the reason why the plaintiffs claim that they were entitled to a call at the arrest scene. They have, they have claimed that the harm is having JB witness them being arrested. Now, that's something that the district court rejected in the summary judgment stage, and is not before the court at this point. So that rationale, which is repeated in the answering brief, has already been denied, and that's not up on appeal for that rationale, that basis of the family association right. So the district court, in denying qualified immunity, really looked to a very specific and very general definition of the familial association right. It's true that a child cannot be separated from his parents without due process or exigent circumstances, but the issue of whether that requires this immediate phone call at the scene of the arrest, instead of at late, shortly thereafter at a police station with a social worker is not clearly established. Plaintiffs cite no precedent saying that it is. The penal code itself, because the language is focused on timing after booking, it's not clear that there would be such a right. And in the absence of, in the absence of any clearly established precedent, a reasonable officer could have believed that under the circumstances, maintaining the mother and son together and bringing them to a county social worker to affect the choice of guardian would have preserved that familial right. I'd like to reserve the remainder of my time. Thank you. CHIEF JUSTICE BREYER. May it please the Court, good morning, Your Honors. MS. SIRENSEN. Good morning. CHIEF JUSTICE BREYER. I am Cyrus Zoll. I represent the plaintiffs' appellees in this action, Guillermo Bonillo, Sandra Hernandez, and J.B. the minor. And I'd like to put in a nutshell the claim the plaintiffs have of associational interference with their family association rights. The separation occurred at the residence the moment the police officers, who are the minor, denied Ms. Hernandez's request to call for a relative or friend to come to the residence to take care of the minor child. The separation occurred right there and continued throughout the time they were at the residence and when the mother and the child were transported  CHIEF JUSTICE BREYER. We're talking a maximum of five hours or four or three and a half? How many hours? MR. SIRENSEN. I would say it occurred until that night when they got the child back, because they lost control, care, and custody of their child when they were arrested and there were refused phone calls. So that was 8 in the morning when they were arrested. They got the child back near midnight. CHIEF JUSTICE BREYER. That's not the issue. The issue has to do with whether there is a constitutional right to make a phone call at the time of arrest. And so I'm asking you, how long did it take from the time the child was taken by the police until the child was placed with the specific people that the defendant asked them to be placed with? MR. SIRENSEN. I would say it was about six hours, Your Honor. CHIEF JUSTICE BREYER. Okay. MR. SIRENSEN. From the moment they were arrested at the home until someone came to the police station. CHIEF JUSTICE BREYER. So, counsel, for qualified immunity purposes, what case establishes that your clients, not at a high level of generality, as the Supreme Court has talked about, but what case establishes that your clients at the time of their arrest had the right to make a phone call to a relative to care for their child? MR. SIRENSEN. Well, actually, it was a case that the Ninth Circuit heard, BATTI, B-H-A-T-T-I, versus the City of Sacramento. The district court cited that case in its decision. CHIEF JUSTICE BREYER. Did that case involve a phone call? MR. SIRENSEN. No, sir. No. That involved ---- CHIEF JUSTICE BREYER. So why does that case establish that there's a constitutional right to make a phone call when you're arrested? MR. SIRENSEN. Because the refusal to make the phone call was the direct proximate cause of the separation and the interference with the familial associations. There's many ways that that can be interfered with, but I don't know of any case that specifically says the refusal or denial of a phone call at the residence results in a ---- CHIEF JUSTICE BREYER. Well, hasn't the Supreme Court specifically told lower courts, including our court, that we have to grant qualified immunity unless there is a case, not at a high level of generality, that establishes the specific right that you're asserting was violated here? MR. SIRENSEN. Well, I wouldn't put it exactly that way, Your Honor. I would put it that if it can be shown, however it happened, that there's an interference, there's interference with familial association, and, in fact, if it happens that there is interference with that, then there's various ways to do it. I mean, there are so many situations that can occur, and, you know, do we need a denial of phone call for one case, a denial of a text for another case? I'm just saying you have to have ---- CHIEF JUSTICE BREYER. Well, the Supreme Court, I would agree with you that the Supreme Court might look at a phone call and a text as the same thing, but I think the Supreme Court has told us there has to be something very similar to that before we can allow a case to proceed in the face of a qualified immunity claim. MR. SIRENSEN. Well, in our case, in this case, there is the state statute that says as soon as practical after the arrest, the parents must be given an opportunity to make a phone call to a relative or friend. MS. MOSS. Say booking or arrest? MR. SIRENSEN. I'm sorry? MS. MOSS. Does it say booking or arrest? MR. SIRENSEN. It says as soon as practical upon being arrested. Subsection C says upon being arrested, not booking. There's another subsection that talks about booking. MS. MOSS. Right. MR. SIRENSEN. But subsection C of California Penal Code section 851.5 says as soon as practical upon being arrested, the phone call must be provided. So that's pretty clear. And there was more than indifference, deliberate indifference by the officers here. They threatened the mother with calling CPS. There was outright hostility. There wasn't just deliberate indifference. They threatened the mother that they would call CPS and have the child taken away from them. This is while the mother is in handcuffs and arrested. And to me, that's more than just deliberate indifference. MR. SIRENSEN. But your claim is based at this point entirely on the lack of a phone call, correct? MR. SIRENSEN. That is correct. The lack of the phone call, and that's what the district court ruled, they should have allowed the phone call. All of this could have been avoided if they just allowed the phone call for a relative to come to the home and take care of the child. MR. SIRENSEN. I agree. And, you know, it looks like they acted pretty boorishly, if we take the facts as presented. But that doesn't necessarily mean there was a constitutional violation. And that's what we're trying to figure out is what case puts us closest to the constitutional violation. MR. SIRENSEN. I would say it would be city, I mean, Watte versus the city of Sacramento. MR. SIRENSEN. Isn't that an unpublished disposition? MR. SIRENSEN. It was published, Your Honor. It was my case. MR. SIRENSEN. Okay. MR. SIRENSEN. I argued that case. MR. SIRENSEN. Okay. MR. SIRENSEN. Which JUSTICE SCALIA. Where is your citation to a time of this being converted from a memorandum disposition to an opinion? I don't see it. All I see is the memorandum, which is not precedential. MR. SIRENSEN. And that's what the district court cited. MR. SIRENSEN. I believe it was published. Let me get my papers. JUSTICE SCALIA. Well, all of our memorandum dispositions are available to the public, and they'll show up in the Federal Appendix, but they are not published precedential opinions necessarily unless they are said to be so. MR. SIRENSEN. I will, Your Honor, I will. JUSTICE SOTOMAYOR. A Federal Appendix citation is usually a tip-off that it is not a precedential case. And I saw this as a Federal Appendix citation in 2008. And I'll go back now and  MR. SIRENSEN. That's my impression as well. And one of the problems with memorandum dispositions to the extent that someone wants to cite them to us is that typically they have no detailed statement of facts, so we can compare facts against facts. And that's one of the problems  JUSTICE BREYER. Are we talking about Abbate v. City of Sacramento? The facts of that case were that MR. SIRENSEN. They have to be set forth. Where are they set forth in the disposition? JUSTICE BREYER. Set forth. The district court recited those facts, I believe, in the decision they made. MR. SIRENSEN. It cited a quotation. JUSTICE ALITO. So, Counsel, moving to another question that I have is, is this right in your view, your clients had the right to make this phone call at their home, yes? MR. SIRENSEN. Yes. JUSTICE ALITO. And does the right depend on what they're being arrested for, or is it no matter what they're arrested for? MR. SIRENSEN. Well, every situation is different, but I don't think it matters what they're being arrested for. JUSTICE ALITO. So if they were being arrested for murder, for example, or serial murder, they'd still have the right at their home before they were taken to the police station and booked to make a call to care for their child? MR. SIRENSEN. Well, this is in the best interest of the child, Your Honor. Yes, I would say yes. Even in that case, I would say that JUSTICE ALITO. So the police officers would have to keep them at their home while they made one or more phone calls. By the way, would they have the right to make one, or would they have the right to make a number of calls until they actually got somebody  MR. SIRENSEN. Well, the statute says up to three calls, three additional calls. JUSTICE ALITO. So their constitutional right would be at their home regardless of what they're arrested for to make up to three calls? MR. SIRENSEN. Well, that's a hypothetical, Your Honor. That's not what we have here. But I would say yes, the statute says up to three calls. I mean, the whole point of the statute is to make sure the child is taken care of. And the interests of the parents are also involved, because the care, custody and control of their children is a constitutional right. And to maintain that, they make the phone call so they have control and care and custody of the child by having a relative or friend come. I don't think the child should be punished for what the parent's crime or alleged crimes are. These are alleged crimes at the point of arrest. And the parents or whoever's arrested is assumed innocent until proven guilty. JUSTICE SCALIA. Was the placement with the relatives that Sandra had asked for, was it the same people? MR. SIRENSEN. Yes, eventually. I believe the social worker made two calls initially and Sandra gave the name of the uncle and the phone number.  MR. SIRENSEN. Yes. JUSTICE SCALIA. So the children were placed with the relative which she specifically mentioned? MR. SIRENSEN. Yes. He was the third on the list that she gave to the social worker, Your Honor. JUSTICE SOTOMAYOR. So it all comes down to a question of timing here, correct? MR. SIRENSEN. Yes, Your Honor. JUSTICE SOTOMAYOR. Okay. MR. SIRENSEN. So, and I think it's clear that if the separation occurred at the point they lost control, custody, and care of their child, it was when they were denied to make the phone call at the home. And that's a constitutional violation. I mean, you can't have an exact decision on every fact situation because not every party appeals even though they had a valid case. So I believe this is specific enough. JUSTICE SOTOMAYOR. Well, let me ask you something else. If the officer had said, Officer Jones is going to stay here with the children, but I need to take you to the station and be booked, you can make phone calls there, but we do have to separate for protective custody in light of the arrest, would that have been okay? MR. SIRENSEN. Well, Your Honor, I didn't exactly understand the question. So if an officer stayed after with the child? JUSTICE SOTOMAYOR. Child, right. But they're separated. MR. SIRENSEN. You know, that's a hypothetical. JUSTICE SOTOMAYOR. Of course it's a hypothetical. I mean, I know it didn't happen here. Okay. Let's just be clear. I didn't, you know, I made it up. That's a hypothetical. But I'm asking you to try to understand the contours of your claim. MR. SIRENSEN. I can answer that. JUSTICE SOTOMAYOR. If they had done that, would that have been okay? MR. SIRENSEN. No, it wouldn't. Because unless the mother said, yes, I want the officer's okay, the whole point is who has care, control and custody decisions regarding those matters with the child? If the mother says, yes, officer, please stay with my child. If the mother says, no, I don't want my child to stay with you, then I would say that's a violation. JUSTICE SOTOMAYOR. So my understanding then is your view is until the relative arrives, the child can't be put into protective custody and separated from the mother or father because of the familial right. Is that correct? MR. SIRENSEN. No, I'm not saying that. I'm saying that the parent should be given an And the point here is they were at the home for a significantly long time. There was plenty of time to allow a call by the parent to come to the home. It wasn't like, I mean, they searched the whole home. They searched all the rooms. Three adults were arrested. So I believe this is a clear case of a violation of constitutional rights. And I'll reserve the time I have left if I need rebuttal, please. JUSTICE SOTOMAYOR. Okay. Well, it actually doesn't work that way. So you either can use all your time now, or if you're finished, that's fine, too. MR. SIRENSEN. No, I will use the rest of my time. JUSTICE SOTOMAYOR. Right. MR. SIRENSEN. Then I just want to make the point that the separation occurred as soon as the phone calls were denied at the residence, and that's a constitutional violation because at that point, the parents lost care, control, and custody, the right to care, control, and custody. JUSTICE SOTOMAYOR. Thank you. MS. TAYLOR. Counsel has just admitted that there is no case that specifically states that there is a right to an immediate call. The only case that was cited as similar was the body case, which is an unpublished case, which we cite in our reply brief at page 5, 281 Fed Appendix 764. We also cited the underlying case so the Court can compare the facts within it, and it is distinguishable because that is a traditional separation-type case where it was a warrantless removal of a child from the home, from the father, even though the father's claim for familial association in that case. So it is distinguishable in the facts, too. It did not involve a phone call. Plaintiff's counsel misleads when talking about the soon-as-practicable language in 851.5 as modifying the time of or as being related to the time of the phone call. The soon-as-practicable language deals with the time of the inquiry to the arrestee, whether they're a custodial parent. So it doesn't actually say that there has to be a phone call as soon as practicable after the arrest? It does not say that. Instead, the timing of the phone call is in subsection A, which says immediately upon booking or within three hours of the arrest. And here, the facts show that within three hours of 8 o'clock, the mother and the son were within, were with the social worker to make those calls. Lastly, going to Judge Brennan's question about whether this would apply to all arrests, if this right was created, that there was a right to an immediate phone call at the scene of the arrest for any crime, regardless of circumstances, it would have very serious security impacts, and it would threaten the security and safety of officers and other people at the scene. For example, a gang-related crime where there are co-conspirators, if there was an opportunity to call from the arrest site to someone and the police officers don't know who this is under the guise that it's for arranging a care, it could create a whole host of problems. So it is a dangerous precedent to make that that would be the standard. And unless there are any further questions, I request that the Court reverse. Thank you. Thank you very much. Thank both counsel for your argument this morning. Bonilla-Cherinos is submitted and we're adjourned for the morning. Thank you.
judges: O'scannlain, McKeown, Bennet